21-1325. And I think each side has 15 minutes, and we're zeroing in on our council by video, and we have another council here in person. Our council on video, can you hear okay? Yes, I can, Your Honor. Okay. Are you okay, our council, in person? All right. Then it would appear that we're ready to proceed. Thank you, Your Honor. Good morning. Keep your voice up if you can. It's a little weaker coming from there. Is this better, Your Honor? A little, yeah. We can hear you. Okay. May it please the court, my name is Nathaniel Nickel, and I represent the petitioner in this matter. Thank you for your time. Going to the heart of this matter appears to be the recent ruling in Patel v. Garland that was handed down by the Supreme Court concerning essentially whether this court has jurisdiction to review the current matter, or whether that jurisdiction has been essentially excluded by the ruling in Patel concerning the statute 1252A2Bi, matters that are left purely discretionary to the Attorney General. Well, it seems like our landscape right now is we've got Patel, and then in the Ninth Circuit we have the Oropesa case. And then the First Circuit has just come out with a case that says they have jurisdiction, but they didn't have the Oropesa issue. And then we asked the parties to be ready to talk about Vega, Vegas or Vega, which is not, that says no, it's a discretionary no jurisdiction. But if we look at Patel, it holds that the jurisdiction stripping provision in the one little I must be read broadly. Why doesn't Patel's holding apply with equal force to the two little I's? Shouldn't we read any other decisions or actions more broadly than any judgment? Because the two little I's is a catch-all section, and then the one I is the any judgment, which Patel covers. So I'm wondering why we shouldn't, you know, I feel like we'd have to do some gymnastics to get around that. Well, Your Honor, the court in Patel itself even said when confronted with hypotheticals by the government and Patel, that while it might have been Congress's intent to create such a statute, that that wasn't the issue before them. And they were only reviewing the very particular matter of their case and presumably the little I, and that they were not deciding or addressing matters of hypotheticals or whether this covers other areas, other matters arising from USCIS decisions or the court. And because of their particularity with addressing the word, say, judgment in the exact context of the little I, it would, I would say that the court was focused exclusively on addressing this one issue arising from that one code section and not the rest of the code or neighboring sections. It would seem contrary that they would pay so much detail to the particular language of one section and not to the others, but yet we were left to assume that we should apply that as well or assume that the same goes for other sections of the code. And wasn't there a Supreme Court case that said that little I and little, I-I and I should be read harmoniously? So why shouldn't we apply the same reasoning from subsection I to subsection I-I? Well, again, to be read harmoniously, though, I think is somewhat vague in that the language is very different of the two sections. But frankly, I-I is broader than subsection I. And so it seems like it is even a broader stripping of jurisdiction. Again, one can take away certainly that interpretation, but this was not, the court did not presume to state that in Patel and avoided expanding it beyond the single I. And in this situation, seeing as how the court did focus so precisely and fastidiously about addressing the language in the background of the little I, to simply say that other parts should be taken in harmoniously, I-I would say that necessarily doesn't imply that they have to take the same judgment that was passed in I onto them, that it is possible to work harmoniously while still having different standards in the different sections of the code. But how would it be harmonious if the narrower section the Supreme Court told us there's no jurisdiction and the broader section, the double I, we have jurisdiction? That doesn't seem very harmonious. I understandably, I- I'm picturing Venn diagrams here or something. Absolutely, and there was certainly some dispute on what the Venn diagram would look like this from Gorsuch and others. But back to the point that we are left only to assume that a harmonious interpretation must be one where the catch-all is viewed as a broader matter and we're going to apply I to the double I as well, but this was not expressed by the Supreme Court and it seemed they were hesitant to even address any issue outside the exact matter they were addressing. Harmonious, I come from a family that has some musicians in it, and harmonious doesn't necessarily mean the same. It means that they go together and complement each other, but that they can be different. And little I seems to- the single little I seems to be talking about specific sections of the code, while little two is talking about something outside of those sections. And so they're not really the same, are they? Certainly, I would not say that they are the same in that it- again, we're focusing on the word how to work together harmoniously. They complement each other. To complement each other, certainly not the same, but the- it takes a leap, I believe, to suggest that what was decided regarding little I, one I, the only harmonious manner to have it work with the double I is that it must also fall under the same expressed wording of the judgment in Patel, wherein the court itself seemed hesitant to even move beyond just the little I. Again, we're talking about the other court saying that these must be viewed harmoniously, but again, we don't have specific guidance on- by harmoniously, yes, I understand the court is saying that this would mean that potentially could be interpreted that the double I must follow the little I, but I don't see that expressly stated in the ruling or the statute itself. You would agree that it wouldn't- that it would not- that harmonious would mean that it can't conflict with little I? Again, well, that it would not necessarily conflict, but that I would concede certainly that it cannot conflict on its- overtly with little I, but that there can be, as with many statutes, tension in between interpretation of different sections, and when the court is only addressing one section in particular, that it is going too far to presume that any interpretation of what harmonious means that it- the double I must be subservient and play by the same exact rules as little I. So, if- are you arguing also that if with an adverse credibility determination, that limited provision- review provision would restore jurisdiction, even if we didn't have it in the first place? Well, the fact that an adverse credibility determination, as well as the finding of a good faith marriage bona fides, inherently involve, as shown in ORA PESA, the questions of law that must involve addressing the facts as well. So, separately, even in the current matter, that the government would argue that because of the ruling in Patel, that now the Ninth Circuit is no longer allowed to evaluate even matters of law addressing marriage or credibility determination, simply because some facts or discretion was involved, or the court might have had some power, or the Attorney General, that to suddenly pull all of these out, these are matters of law that there's a long tradition of in the Ninth Circuit, that while they do involve the facts, these are inseparable, essentially, from the matters of law, and that this- any interpretation of Patel, or whether it applies to the double I, even in the extreme interpretation that it also is a jurisdiction bar for these situations, the fact that matters of law and constitutional matters are still in play, and the fact that in the Ninth Circuit, these matters of law, these are mixed with facts that can't be separated, the court certainly has the power to exercise jurisdiction in this matter. All right. Well, let's assume we have jurisdiction for the moment, and then we have to look- and if we look at the record, you have to show that the record compels the finding that the marriage was in good faith. And the IJ pointed to three main inconsistencies in making an adverse credibility determination. One, conflicting testimony about the amount of time Zia spent in Illinois before separating. Two, conflicting testimony about the reasons for the divorce. And three, the question of whether Zia actually appeared in court for the divorce proceedings. What evidence can you point me to that shows that these findings are unsupported? Well, the first point that the- a disagreement about how much time in the testimony before versus six to eight weeks, is if anything, this would- it would be inappropriate to hold this against the petitioner for their credibility, because if anything, a person would try to exaggerate or embellish a claim, were they intending to enhance their claim? But a mistake or a problem with memory wherein they actually expressed a belief that they'd spent less time wouldn't seem to be a matter where they're trying to take advantage of or mislead or deceive the court. But he signed a divorce proceedings petition, and there was a discussion in the court about that. And if believed, that's fairly damning to his case about some of the claims that he's making. So why isn't that just- I mean, not that- I mean, you obviously argued that he gave an explanation for it, and the IJ was- they were- was free to believe that, but didn't. So why does that compel the other result? Because that divorce petition's pretty damning. Again, well, as was stated in the previous hearings, that the petitioner was essentially strong-armed in the situation of signing the divorce decree, but- Well, and if the IJ had believed that, if they believed it, then they would have found in your favor, right? Yes, but- or possibly, Your Honor. But essentially, the entire- doing a- for the credibility finding of a totality of the circumstances analysis, unfortunately, because of the high number of discrepancies in the transcript that are not being recorded, I believe we're unable at this point to even evaluate what exactly the judge was basing their evaluation on, at which- because of the failure to record significant portions, essentially a due violation clause of the right, we can't- the BIA couldn't evaluate it properly and said- appeared to pass the buck, saying that most of the areas of lack of transcript were later- we could assume it worked out in context of the conversation. That involves a lot of assumption, and precisely why the record is supposed to be preserved is so that the court- present current court or the BIA has a record and the petitioner themselves to challenge these determinations where they are hamstrung, essentially, by there being not just an imperfect record, but a record missing considerable portions of testimony. Do you want to save any time for rebuttal? I'll save this for rebuttal, Your Honor. Okay. All right, we'll hear from the government. Good morning. Good morning, Your Honors. May it please the court, my name is Jonathan Robbins, and I'm here on behalf of the respondent, Mara Garland, the Attorney General. Good morning to everyone. As my colleague mentioned in the opening presentation, the primary question for the court today is whether it should dismiss the petition for review for lack of jurisdiction under the jurisdictional bar at Title VIII U.S.C. Section 1252A2. So are you making the argument that Oropesa Wong was wrongly decided? No. What we're arguing- Well, you know we can't, as a 3J panel, we can't overrule another 3J. That would have to be en banc. Well- I mean, Patel would have to wipe it out, but we can't- We're not arguing that. We're arguing that Patel constitutes intervening authority sufficient to be able to overrule the Oropesa case. And the reason that is, and I realize that I'm talking to the author of the decision, this court in Miller v. Gamey explained that what's critical for the intervening authority to be sufficient is not that the holdings have to match. It's that the underlying reasoning of the decisions have to match or that the mode of analysis has to match. And so the petitioner's primary contention as to why he argues that Patel shouldn't be controlling is because Patel was looking at B-1 instead of B-i. Decisions have to be irreconcilable. Yes, clearly irreconcilable. And while that is a high standard, we do believe- That's not the same as matching. I'm sorry, what? Okay. I'm sorry, I couldn't hear. Never mind. Okay. Well, the point here that we're making is that what the court did in Oropesa is fundamentally inconsistent with what the Supreme Court did in Patel. The government, I think it's important to remember, in Patel, went into that case with effectively the Oropesa position. We went in saying that was an adjustment of status case, and we said, okay, yes, adjustment of status is discretionary, but you have subsidiary determinations with respect to that that are not discretionary. In that case, it was whether the individual had been admitted to the United States, right? That's not a discretionary determination subject to the unfettered discretion of the Attorney General. And the Supreme Court said, no, the government's wrong. And the reason the government's wrong is because it doesn't comport with the text, the context, or the structure of the statute. But they were talking about one. They were, Your Honor. Which has a different text and a different structure. Well, not quite, Your Honor. There are obviously some differences, but the key things that the court said in that case was that it's the mode of analysis and the underlying reasoning. And when you look at what the Supreme Court said about subsection B-1, the things that it said about that section are equally applicable to B-2. So let's take a look at that. The first thing that the court did in Patel was it looked at the term any with respect to any judgment. And it said that term any has a broad scope. And we know under commonly recognized principles of statutory construction that when Congress uses one word in a particular portion of a statute and then uses the same word in another section, that it intends for it to have the same meaning. And when we look at B-2. So the word any is modifying judgment. Yes, any is modifying judgment. And so in B-2 it's modifying any other decision or action. But we know that because the Supreme Court said that the term any means that means a judgment of whatever kind, it stands to reason that in B-2 any means a decision or action of any kind. Well, do you think one and, I mean, little i, one, one little i and then two little i's, which one is the broader section in your view? Oh, well, it's quite obviously subsection B-2. That operates as a catch-all provision. But certainly when you look at the language, compare judgment in one to decision and action in B-2. In Patel, when the court was looking at the determination of what judgment means, they said that it means any authoritative decision. So when you look at any other decision or action in B-2, that would seem to include not just authoritative decisions, but non-authoritative decisions and actions. So it seems to clearly be broad. So to get to your position, obviously, if we accept that there is no jurisdiction, we're going to be at odds with the First Circuit now. So it's a split in the circuit, right? Not quite. I'm aware of the decision, the Al-Zaban decision. There's a number of reasons why we think that decision is unpersuasive. But I don't think the court has to directly conflict with it because that case wasn't dealing with an adverse credibility finding. So remember that in this case, we have sort of the overall statute, which is the statutory waiver, which implicates the good faith marriage finding. But then you have an extra provision when it comes to credibility, where the statute provides that the determination of what evidence is credible and the weight to be given that evidence shall be within the sole discretion of the Attorney General. So you have this additional provision. That provision was not at issue in the First Circuit, and the First Circuit didn't address it. But I believe the First Circuit actually said that credibility determinations would be the type of determination that would cover under the bar, and certainly Patel did. So that extra sort of analysis here distinguishes this from the First Circuit. That's a question I had. Are there two determinations that we have here, one, that it's not a bona fide marriage, and two, that there is adverse credibility finding? And do we analyze those differently? Or is one part of the other, and it's one analysis? Certainly the analysis blends together because the reason that there was a finding of no good faith marriage was because of the lack of credibility. So I don't see how you could really divorce the two from each other. No, but does the limited review provision restore jurisdiction for that? I mean, because our case law holds that good faith marriage determination is a mixed question of law and fact, why doesn't this case fit within the limited review provision, which is, I think, 1252A2D?  When it talked about how mixed questions of fact and law are included under the jurisdictional restoration provision at 1252A2D, it made clear that in order for that restoration provision to apply, you have to be applying undisputed facts to law. And the problem here is that when you're dealing with an adverse credibility finding, that's the quintessential example of disputed fact. So that restoration provision doesn't apply here. Well, so just so that I understand your position, I want to make sure that. So to come to the conclusion that you want us to come to, that you're advocating, we have to find that Oropieza and Patel are irreconcilable. We've got to jump over that hurdle. Correct. But then my understanding is that you're also saying that the limited review, so that then the limited review, so then there's not jurisdiction that Patel says that then we apply Patel, apply it harmoniously to two little eyes, and then we would also have to say that the limited review provision does not restore jurisdiction. Is that your argument? That's correct. Well, I want to be clear about something. It doesn't restore jurisdiction over the credibility issues because that, first of all, that's, again, specified in the statute to be in the sole discretion of the Attorney General. And, again, the Supreme Court's explained that for the restoration provision to apply, you have to be applying undisputed fact. And adverse credibility, clearly the facts in this case are in dispute. But doesn't that really go to the merits of the good faith marriage question? It does. Yeah. It does. So if we have jurisdiction, we would have to accept the credibility determination. Well, you'd have to assess it under the substantial evidence standard of review if you found that it would. But if anything — No. I'm sorry. What? If we have jurisdiction to review what was decided in the case, to review the — to consider the petition, then we would have jurisdiction to review the good faith  Yes, if you found that there was jurisdiction in that part of the law. And in determining that good faith marriage, whether there was good faith marriage or substantial evidence, we would have to regard the credibility determination as within the purview of the agency, right? Isn't that what that means? Well, the statute itself says that the discretion as to the weight and credibility is within the sole discretion of the Attorney General. Right. And the court issued an order asking the parties to discuss the recent Vega case. Vega isn't directly on point because it was dealing with a U visa waiver, a waiver of inadmissibility. But one of the things that the court talked about there is that the reason that the jurisdictional bar, the same bar applied in that case, was because the waiver of that case was in the unfettered discretion of the Attorney General. And here we do have a statute with respect to credibility that very plainly specifies that this is within the sole discretion of the Attorney General. So we would argue that even though Vega isn't directly on point, the reasoning of the court in Vega, pointing to the statutory hook that specifies this to be in the discretion of the Attorney General, puts the credibility issue in this case also within the ambit of the jurisdictional bar because it's plainly specified in the statute to be in the discretion of the Attorney General. Now, I do want to clarify that we do believe that the restoration provision. Can I ask a question about that? So is the government's position that the restoration can never occur in an adverse credibility finding? Yes. Determination? Yes, because that would be a situation with disputed facts. But is that generally the case? Because there could be a dispute. The facts could be settled in what the dispute are, and then it's just a determination of whether or not that leads to adverse credibility finding, right? So, like, you know, I forget what the dispute was in this case, whether or not he attended the divorce. He says that he attended the divorce. One person says there isn't. So those facts are not disputed. It's just the question is, does that lead to a determination that he was adverse credibility? So why couldn't we have jurisdiction over that question? I mean, I see what you're saying, that it's not disputed what they said. Right. But it's still a disputed fact as to what happened, right? And so that has always been reviewed for substantial evidence because it's considered a factual finding under the statute. Well, because whether or not you have no credibility seems almost like there's some standard to it. I mean, so it's not like a, you know, so the facts are what they are. Everyone knows what the facts are. He said he attended the divorce proceedings. I think there's some proceedings that suggest that he – or he said he didn't attend, and then there's proceedings that say that he did attend, and those facts are undisputed. So the question is, what does that mean? Does that mean he's lying? It seems that we could have jurisdiction over that question. But doesn't he also claim he was coerced to sign that? So isn't that a factor? Yeah, I'm just saying in the hypothetical, that's the only dispute. I'm just wondering if we never have jurisdiction over adverse credibility. I think the answer is still no. It's always been a little bit confusing as to what constitutes a mixed question of fact. I agree. On what constitutes a question of fact. Right. Thank you. Well, the Supreme Court has sort of talked about this a little bit in cases like Village Lakeside, where they've said, okay, you have different types of mixed questions of law and fact. Some of them lean more legal, and some of them lean more factual. And oftentimes the standard of review that will apply will depend on whether it's a more fact-intensive mixed question of fact in law or a more legal question. When it comes to adverse credibility, we're clearly talking about the kind that lean factual, right? There's no chart that we can look at that says that if somebody says a particular thing and it says something over here that is a legal matter, they're not credible, right? It's going to be a case-by-case sort of analysis. I think that's why it falls under the statute under the substantial evidence standard of review as a factual matter. I don't know of any court that has said that adverse credibility is a legal conclusion. So I think we're probably safely in the realm of being able to say that this is an issue of disputed fact when the parties don't agree on what actually happened. Okay. And then my second question is, which invocation of the word discretion in 1186A, C-4B, is what's giving – is depriving us of jurisdiction? There's – you know, it says up top, you know, in the Secretary's discretion may remove conditional basis. And then on the bottom, after the ABCD, it says then the credibility determination is discretionary. Which discretion are you invoking? We would say that both bring this within the bar. Okay. So there's – it's a little bit confusing because when you read the cases, there are two circuit splits. One is with respect to that first provision as to whether just the subsection B, whether there's jurisdiction to review that. And then there are cases which implement subsection D, the section regarding credibility and weight. Right. So the split with respect to that last section about credibility, which is clearly at issue here because of the adverse credibility finding. As far as I know, this Court is the only one that has previously held jurisdiction over that. Even prior to Patel, the weight of authority has been that there's no jurisdiction over that implicated provision. So this case does present a unique opportunity to be able to resolve that split. Patel didn't deal with any of this, right? Well, Patel didn't deal with this provision precisely, the good faith marriage. But that, again, I want to reemphasize that this is closely on point because of what the Supreme Court said about the context, text, and the structure of the statute. Because the primary things that the Supreme Court said about B-1 are obviously applicable to B-2. Take, for example, the structural argument that it made. It said, okay, well, when Congress wants to say that it wants to bar something over a discretionary judgment, it knows how to do that. It could say discretionary judgment, and it cited to certain provisions in the code where Congress had done that. That's exactly what it said. But it didn't do that. It said any judgment regarding the granting of relief. That same structure is, yes. Whereas the, okay, I want to make sure that I understand. Right. So subsection B-2 has that same structural significance, right? It doesn't say any discretionary decision or action. It says any decision or action, the authority for which is specified to be in the Attorney General's discretion. Right. So that same structural significance that the Supreme Court found in B-1 is present in B-2. The context, that's obviously the same, right? The Supreme Court said that these provisions were enacted by Congress. Wait. Wait. You're going too fast. Oh, I'm sorry. I'm sorry. Yes. The language of it, I want to make sure I understand. Little 2 says any other decision or action of the Attorney General or the Secretary of Homeland Security, the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security.  So it has to be specified under this subchapter. Correct. By statute, not by regulation, but by statute, and it has to be in the statute. Correct. That language is not in 1. That isn't, but that's sort of. Well, okay. But the structure is the same, and that's the point, right? It doesn't say any discretionary decision or action, right? That was the same problem with B-1, right? The Supreme Court said it doesn't say in B-1 any discretionary judgment. It says any judgment. In other words, they separated out the authority from the source of authority, and the Supreme Court said we find that structure significant, and that structure is the same thing you find in subsection B-2. So there's no reason to suggest that the Supreme Court wouldn't find that structure equally significant. I take Your Honor's point that the. . . To reconcile. Well, I take Your Honor's point that the language is different, but that's natural because when you understand the purposes of B-1 and B-2. B-1 is enumerating specific provisions. So when it talks about regarding the granting of relief and then it lists specific provisions like adjustment of status, cancellation of removal. Right. We understand why it's doing that. And then obviously the catch-all provision isn't going to need to specify specific provisions. No, because it says any other decision or action where there is a specific statutory delegation of authority to be discretionary. So the discretionary has to be in the statute. Right, right. Let me just, just so that we understand your position, and then we're going to go back to the petitioner. We're taking you over, but I think this is important to set out. So if you were writing the opinion, which you are not. I wish I was. But that being said, thumbnail sketch me where you start out with what this court can do and what this court would have to do and what you're asking this court to do relative to Orpeza-Wong and 1252A2B2, and then the limited review as well. So just give me a sketch on that. Okay. I think you would have to start by acknowledging the precedent that finds that there is jurisdiction in the Orpeza case. But then we would ask that you find that the Supreme Court's underlying reasoning and mode of analysis in Patel, although not directly specific to the holding, that the underlying reasoning and the mode of analysis the Supreme Court employed in Patel is fundamentally inconsistent or clearly irreconcilable with the court's analysis in Orpeza, and that it effectively overruled Orpeza, even though the holdings aren't exactly the same, and that the reasoning is closely on point. Remember, the language that you can look to in Miller v. Gammey that will justify this is that it says that the holdings don't have to be exact. They have to be closely enough on point. And when you look at what the Supreme Court said about the text, the structure, and the context of the section in B1, that is closely on point to subsection B2 because even prior to Patel, we know that the Supreme Court have said that these work in tandem with one another. And Your Honor mentioned this before, that harmonious doesn't necessarily mean exact. That's true. But it does mean something when the Supreme Court has said that these two provisions work together. It wouldn't make any sense. Okay. Can I just let him finish, and then we can continue? No, I'm not going to finish. Because I realize there's a disagreement. But I'm having you write it right now so I understand your position. Sure. It wouldn't make any sense for the Supreme Court to find jurisdiction over factual findings related to the grants of substantive relief in subsection B1 with respect to cancellation, adjustment, all those enumerated provisions, and not have jurisdiction over factual findings with respect to under the much broader provision under subsection 2 with things that might not even be substantive relief. So think about the types of things that could be included in subsection B2. For example, there's a provision in the statute that talks about the Attorney General's ability to grant parole. Parole is not substantive relief. It doesn't grant the individual anything that isn't temporary. But that's still something specified to be within the discretion of the Attorney General. So why would there be jurisdiction over factual findings in the first subsection with respect to substantive relief and not jurisdiction over things that are less significant, types of actions and decisions that are less significant than that? There's no practical reason why that would be. And I do think it matters. I think it's safe to say that the Supreme Court in Patel did something that surprised a lot of people. It certainly interpreted the provision in a way that was much broader than people expected. But it does stand to reason. Including the government. What's that? Including the government, yes. As I said before, we went in with the Oropesa position, right? That was, we said, subsidiary factual determinations are reviewable. But, again, the reason it's irreconcilable is because the Supreme Court said that position does not comport with the text, context, and structure of the statute. I mean, if that's not closely on point, what would be? So then talk about limited review for me. It's true, Your Honor, but we're not talking about some statute out there in the ether here. We're talking about the neighboring provision of the same jurisdictional bar that shares similar language, like the word any, shares the same structure. Okay. I want you to finish my question, and then two of you can go back and forth. Okay. So you've said what your position is. Now dovetail into what you would say about limited review. There is one area where there's limited review in this case, and that's with respect to Petitioner's due process claim. That plainly covers his due process claim regarding the indiscernible portions of the transcript and his claim that the transcript was deficient. Now you would have to deny that portion of the petition for review because there is jurisdiction to review that. As we've argued in our brief, he hasn't shown prejudice, and we think you should deny that. And I won't get into that because I see I'm way over time here. But that is the only area where we think that there is restoration of jurisdiction. We do not believe that jurisdiction is restored over the adverse credibility finding because there we are plainly dealing with dispute. Okay. I understand your position now. So I will turn it to Judge Schroeder if she has more questions. Okay. And I'm good. Okay. Thank you so much for your time. Thank you for your helpful comments. All right. Now we're going to go back. And we may need more time with you, and I'll be generous with the time. We're trying to really focus the issues. So if Petitioner now, you've heard how the government would write the opinion. So do you want to respond to that? Yes, Your Honor. I mean, the government's position would seem to be that while the court in Patel was exacting about the language specific to little i, that instead we should assume that this applies to other sections of the code as well, namely the double i, without having done any sort of analysis of the language of that or its relationship to its place in the law. And at one point to claim that they were very exact about the definitions and the meanings and the definition of any and judgment, and at the same time to say, so we're just going to generalize and say that whatever's in this language is also going to apply to the Section 2. It seems contrary position at one time demanding fastidiousness, and at the other time saying, well, we can just generally accept that that must have been the right thing. But if you're going to write the opinion, are you going to start with ORA PESA is not overruled by Patel? Is that where you're going to start? Yes, Your Honor. Okay. And then you're going to go from there. Yes, Your Honor. Also, the ORA PESA deals, I mean, for our purposes, essentially with the jurisdiction to examine matters of law and sometimes mixed with fact, and that these issues here, it's Patel was not dealing with the issue of analyzing mixed law and fact and what the standard is and how much law and how much fact have to be there and how much jurisdiction, when the court has jurisdiction, if it's a matter of law or when it loses it. It definitely states that the court maintains jurisdiction to address matters of law. Now, if those matters of law are necessarily dependent on the facts inside, one would presume that the court maintains jurisdiction to address the facts underlying the law as they relate to the entirety of the situation. And as for VEGA, the case in VEGA, again, as counsel of government did state, is significantly different from the issues at hand in ORA PESA. VEGA deals with a decision on a waiver and ineligibility based on a criminal background and a decision made at USCIS, and this is significantly different from the matter at hand here where we're dealing with issues of whether marriage was entered into in good faith, whether the petitioner was credible, and these issues of credibility and marriage both are significant outliers from the subject matter of the case in Patel. And to say that it is irreconcilable, they are only related in the fact that it's a matter of discretion and a matter of law that's being debated here. And I don't see how Patel inherently overrules ORA PESA when ORA PESA is dependent on matters of law with some facts mixed in. All right. We don't have any additional questions, and we've taken you over time as well. I want to thank both of you for a very helpful argument in this difficult case, and it's always a pleasure when the attorneys are prepared and are able to, you know, make non-frivolous arguments about the case on both sides. So thank you both for your argument. This matter will stand submitted. This court's in recess until tomorrow at 9 a.m. Thank you. All rise.
judges: SCHROEDER, CALLAHAN, BUMATAY